Tobacco Caffeine Limit. Good morning, and may it please the court. My name is Paul Dufert. I represent Craig Dibble, a longtime resident of Tokyo, Japan, whose product liability case was dismissed with prejudice back in January on the ground that under the Doctrine of Forum in Ohio, in the United Kingdom, where no one resides, not Mr. Dibble, who's been in Tokyo since at least 1990, not Torax, not Ethicon. And with reference to the prior case, this is a very important case to Mr. Dibble, too. And I would submit it's not that hard, actually, I think, under the factors. This is simply not a case where it's more convenient to anyone, particularly Mr. Dibble, to try this case in the United Kingdom. It actually makes no sense. And Applees, you can ask them, I don't think they even really pretend that it is more convenient to try this case in the United Kingdom. For purposes of making use of my limited time here, I've broken things down into three pieces. Well, I have a question that I think is pretty important. Your brief on pages 16 and 17 asserts, or at least implies, that the first Lynx was manufactured by Torax in Minnesota. And that is not alleged in the complaint. And to my knowledge, or to my understanding of the record, there is nothing that determines where it was manufactured. Correct. But what we say in the complaint, and I think we try to be careful in the brief, is that the complaint alleges that the principal place of business of Torax was in Minnesota. I will say, to the best of our knowledge, it was manufactured somewhere in the United States. We don't know. We haven't had discovery. If there was a remand and an opportunity to amend, we probably would research that and find that out. The burden in this case, however, is on Apple Lease, on the defendants below, to establish and prevail on each factor under the Piper Aircraft. So they have the burden of saying, look, this thing was manufactured in London. They don't do that. All we can say is we are suing Torax in what we believe to be its principal place of business here in St. Paul. That is alleged in the complaint. That's all we have as of today. This case had no discovery. We've had no opportunity. Well, I mean, you, for reasons that I think I can easily infer, you chose the fifth or sixth least obvious venue for this case. You didn't choose Japan. You didn't choose England. You didn't choose Colorado. You didn't choose where this was manufactured, which I would suspect was not Minnesota, although it certainly could have been. You seized upon a former principal place of business to get a forum you thought would be more friendly than the others. With respect, Your Honor, this is a product liability case, so on the liability side, we have to establish... The place of manufacture would be critical from a convenience and evidentiary standpoint. As well as design, as well as marketing, as well as... Marketing is not... No, that's... All right, that's incidental, but in terms of witnesses, significant witness convenience, you want to talk to the people that designed and manufactured. That is correct, Your Honor. Okay. And we would like... You didn't bother with that. Well, no. You liked a forum where, A, you wouldn't have to pay attorney's fees if you lost, which is, I'm sure, was very critical, the UK. And B, you probably had the best chance in the rest of the world to get plaintiff's attorney's fees if you won. Your Honor, with respect, during all of the relevant time period, Torax was an independent company here in St. Paul. It is reasonable to assume that the device in question was designed, marketed, and manufactured here. The complaint alleges at great length that Craig Gible personally did rely on marketing materials in 2015 generated by Torax in making the decision to use a LYNX device. The burden, again, is on the other side to show that the preferred alternate forum of the United Kingdom is more favorable, more convenient. As I break this down, there's two clear errors of law in the opinion below, and then there are the whole Piper aircraft factors. But an error of law, which the court makes, and to echo a little bit about what Judge with respect to convenience on the statement that, quote, most, if not all, of the facts underlying this case occurred in the UK or elsewhere outside of Minnesota, Japan, Colorado, Thailand. That is not the appropriate analysis under Piper aircraft or under this circuit's opinions. The issue is looking, as a court sitting here, is the proposed alternate forum more convenient? The proposed alternate forum is the UK, period. So that is the analysis that the court below is obligated to do. And in this case, so that is the application of the factors, I believe, proceeds under an abuse of discretion standard. But which test to use is a de novo issue. Here, the court simply used the wrong test. The test was this case doesn't have enough Minnesotaness to it. That isn't the analysis under Piper aircraft. You have to go through the factors. Yes, it's my understanding, counsel, that what the district court did was it conducted basically a Minnesota versus everything else test. Correct. And that everything else weighed in favor of the UK. And yes, and I don't think that's correct either. But that is the result that it came up. Whether that would be whether contacts in Colorado, New Jersey, Ohio would favor UK. I would say no, Your Honor, because if this case stays where we filed it, which Howery has a consolidated links group of cases, if it stays here, I can subpoena Dr. Bell in Colorado and his records. I can subpoena people in Ohio at Ethicon. I can, you know, subpoena whoever manufactured this device in Texas or wherever it was made. I don't know. But presumably, it's in the United States and it was run out of Minnesota. If I'm forced to go to the United Kingdom, it's not what Craig Dibble, in terms of having compulsory testimony from unwilling witnesses, that is the test, compulsory, the ability to compel testimony from unwilling witnesses, not the ones that willingly appear, on all of those people, Dr. Bell, his office, whoever manufactured it, whoever designed it, whoever talked to the FDA, whoever at Ethicon, you know, talked to Craig Dibble, I have to go through letters of rogatory or some like Byzantine system to try to compel that testimony. Who was the English doctor that did the... That is in one paragraph. Well, there's two different doctors in England. So there are two things that happen in England. Who's that? Where's Dr. Bell? Dr. Bell is in Colorado. He's the one who took the device out of Craig Dibble and looked at it in his hands, determined it was defective, and actually looked inside of Craig Dibble and saw a scarring. And then did the second bad surgery? He put in another device, which has also malfunctioned at this point. Craig, the thing is, to get testimony from all of those people, from the United Kingdom, is very difficult. And with respect to liability, all of the liability evidence is in the United States. And I can subpoena that evidence from a court here. On damages, the evidence is largely in Japan, 80 percent. Another 10 percent, maybe 20, but with Dr. Bell in Colorado. And then there's a little bit in Thailand and a little bit in the United Kingdom. Counsel, if you were allowed to amend your complaint, would the district court have a more complete picture to view and conduct the forum non-convenience analysis? Certainly, because as Judge Loken pointed out, this is a discretionary test. It's not like minimum context. So in terms of pleading initially our complaint, I didn't, for every chance I had, specify that X happened in Minnesota, Y happened in Ohio. So the complaint is not as complete as it easily could be with that. Plus, we could bulk it up with more evidence of things that we know happened in Minnesota or were directed from Minnesota. We never had an opportunity to do that. The court, this is the other error of law, kind of sua sponte at the end of its opinion, came up with the conclusion that such a effort would be futile. And it's well-established that a finding of futility proceeds under a 12B6 standard. You typically need a bar of law. And again, we have de novo review on that issue. The court did not explain why it deemed the... You read all the Eighth Circuit cases about this, trying to, asking for leave to amend after you've lost? We are very, very negative on that. Correct. Technically, we... And the failure to file a proposed amendment complaint is also fatal. So just to clarify the record of what happened, we asked in a sentence in our opposition the motion to dismiss for leave to amend if we lose. Well, this happens all the time. Happens all the time. How many half dozen cases do we have that say that's not enough? Your Honor, what actually happened then is the court accepted that motion, but denied it in its opinion on the grounds that the motion was futile. Our motion was then to reconsider the finding of futility on the grounds that the court had used the incorrect standard on futility. It has to articulate a legal bar. There was none, and we were prepared to explain. We can, you know, persuade the court that there are facts, and they might be hypothetical facts. It wouldn't have to be an actual amendment. However, the court wanted to proceed. It didn't give us that opportunity. So the finding of futility is a reversible error. What's our best case? A circuit case on that proposition. Well, I'm about to run out of time. So why don't I get back to you and rebuttal with that, if that will do? If I may have a moment then, let me see what I can do. No, you answer my question so Appellee's Counsel has the opportunity to pick up on it. Okay. One moment, Your Honor. I don't think there is, at least not in the Eighth Circuit, because this is a question of abuse of discretion, not an error of law. I mean, this assertion of an error of law is just to get around the abuse of discretion standard of review. Well, if I may proceed, since my time is limited to the abuse of discretion standard, as to all the paper aircraft factors. You can use your time any way you want, but that's the amount of time you've got. Okay, Your Honor. You can use it now or you can wait for rebuttal. Thank you, Your Honor. Just with respect to the sources of proof for the tort, liability is all in the United States. And I could also talk about communication. There's 10 different items I could talk about, but they're not in the United Kingdom on liability. On damages, the sources of proof are Dr. Bell in Colorado, Ethicon in Ohio, a lot in Japan, a lot in Thailand. But that does not speak to the United Kingdom as a more favorable, more convenient place to try the case. Compulsory process, we've already talked about. On the public interest factors, court congestion is number one. We already have a district court here that is handling leased cases. To have a new judge in the United Kingdom get up to speed on that issue, and to try to understand, you know, FDA regulation of medical devices in the United States, which is what we expressly plead in our complaint as the basis of two of three causes of action, would be a waste of judicial resources. With respect to... Might not be the basis of liability in the United Kingdom. I believe we are the master of our complaint, so we should have a right for a U.S. manufactured device approved by the FDA to raise regulatory issues to establish strict liability and establish negligence per se. We are the master of our complaint. So by moving us to another thing, it could well also deprive Craig Dibble of theories that he should be able to avail himself of. He chose to use a product manufactured by a Minnesota company. The state has an interest in supervising its own companies. The country has an obligation to, like, has an interest in enforcing FDA regulations and interpreting them. None of that makes any sense in the United Kingdom. It's just not a convenient place for us to try this case. It is wildly inconvenient. That is their burden to show they haven't done it on the complaint based on the allegations we have. With that, I will reserve the rest of my time for rebuttal. Your time's expired. Okay. Thank you.  Mr. Cipolla? Good morning, Your Honors. May it please the Court, Dan Cipolla on behalf of the appellees, Torax Medical and Ethicon. We're asking that the Court affirm the District Court's decision dismissing the case for forum nonconvenience. The standard that the Court is supposed to apply is the abuse of discretion standard. Obviously, that means the Court is going to look at Judge Doty's opinion and analyze whether he made any errors in the, in any errors of law, whether he made any errors of fact. But what the Court cannot do, what the Court does not do under this standard of review is reweigh the evidence, rebalance the factors, and come to its own decision akin to what it would do during a de novo review to undo what Judge Doty did. That means even if this Court were to say, we may balance these factors differently, we may weigh these factors differently, that alone is not enough for the Court to reverse Judge Doty's decision on the motion to dismiss for forum nonconvenience. And that's exactly what Mr. Dibble is asking this Court to do. He has a different view of what factors. What's the inconvenience? The inconvenience to, well, you have to consider the inconvenience of both of the, both of the parties, not just to Mr. Dibble. The inconvenience is, and the reason for sending the case to the United Kingdom is there, the evidence that is more important or most important to Torax and Ethicon is in the United Kingdom. It's the physician that Mr. Dibble visited when he had the device implanted. It's all of the medical records that relate to that. All of the records that are subsequent to that, where he reached out to his physicians in the United Kingdom and his treatment was directed from there. If you look at the factors under Piper Aircraft, the private interest factors and weighing those factors, it's easier for Mr. Dibble to get the evidence he needs. Why can't Mr. Dibble figure out what's easier for him to do to try his case? I mean, he says the products manufactured in the United States, possibly Minnesota, possibly Texas, the treatment that he received in replacing the devices from physicians here in the U.S., any number of other important evidentiary items are here in the U.S. I'm struggling with the inconvenience of this forum. I think the, to address the first part of your question, which relates to Mr. Dibble being able to access evidence, before the district court, Torax agreed that it would make witnesses under its control and documents in the United States available in the United Kingdom. So Mr. Dibble's primary argument that there's, the majority of the evidence is in the United States and he wouldn't be able to get it if he was in the U.K. is directly impacted by what Torax said it would do. It would make corporate witnesses available, witnesses under its control, and the documents available in the United Kingdom for the lawsuit. On the other side, there are witnesses and documents in the United Kingdom that Torax would want to use in order to support its defenses. Primarily the physician, the records about the device being implanted there, and the subsequent treatment that Mr. Dibble received there. It is easier, because of what Torax has promised to do, it is easier for Mr. Dibble to get that information in the United Kingdom than it would be for Torax to get the information from the United Kingdom into the United States. So when you look at the whole of it, all of the different facts that apply to this factor, it is going to be easier for the parties to have the information they need in the United Kingdom. It doesn't mean that all of the evidence that the parties may want is going to be in the United Kingdom, but the bulk of the evidence that is going to be important for this case will be there. Namely, the records and the testimony from his treating physician, both treating physicians, both the one that implanted the device and the one he subsequently sought treatment from. All of their medical records, any of the records and testimony you may want from nurses who were in the operating room at the time. Counsel, one of the things that you noted in your opening is that in order for us to determine whether there was abuse of discretion, we need to look to see if there are any legal errors in the district court's analysis. One of the things that the district court did was that it weighed Dibble's contacts with Colorado in favor of a determination that the United Kingdom is a more convenient forum. Now, we don't have any Eighth Circuit precedent on that, but the Eleventh Circuit says that that's legal error. Why would contacts with Colorado favor a forum in the United Kingdom? I don't think that it's necessarily the contacts with Colorado that is... Probably the surgery, all the things that happened in Colorado. Yeah, certainly there was contact in Colorado. I don't dispute that the second the explant surgery happened there, Mr. Bell is there, there may be some medical records there. But the relevant part of the analysis is whether that evidence can be brought into the United Kingdom, whether there are mechanisms available to bring that evidence into the United Kingdom for trial. And the answer to that question is yes. And really, that would be the information from Colorado is one of the only things that would be left here in the United States to get over there. And there are ways to do that. You get letters of reference. You send them to the federal district court here with a subpoena. This court can issue a subpoena and that information can be brought into the United Kingdom. It's easier for that to happen for the reverse to happen. It's easier to get witness testimony. It's easier to get the documents because the availability of documents is broader than it would be if the situation were reversed. Maybe I'm just restating Judge Smith's question, but it's kind of hard to understand how when you have a Minnesota company and you've got surgery in Colorado and you've got contacts in New Jersey and Ohio, that the United Kingdom is the more convenient forum. And under forum non-convenience basic doctrine, it's supposed to be where is it most convenient for the trial. And it's only supposed to be changed from the forum chosen by the plaintiff in extraordinary circumstances. What are the extraordinary circumstances that make the United Kingdom the most convenient place? I think there are a number of factors and they all relate to different parts of the Piper Aircraft Test. We've talked a lot about the witnesses, but there are other things that are more important and make the United Kingdom a better forum for Mr. Dibble's case. He's a U.K. citizen. He, in the complaint in paragraph seven, admits that he was born in the United Kingdom based on when he went to college. You can figure out that he was born before 1983. He's a U.K. citizen. I don't know why they're not able to concede that fact. The first surgery happened in the United Kingdom where the device was implanted. I know we've talked some about where the device was manufactured. It's not in the complaint. That evidence is not part of the record. It was maybe somewhere in the United States. It's possible that it was in the United Kingdom. Regardless of where it was manufactured, it made its way into a U.K. citizen at a surgery that happened in the United Kingdom. One of the public factors that the court considers is when it's balancing whether Minnesota Federal Court is the right forum or whether the United Kingdom is the right forum, is what are the respective interests of the two different forums? This is not a medical malpractice case. It's a products liability case. Correct, but there is still going to be important evidence about what happened in the United Kingdom. It's also important that citizens of the United Kingdom who are injured by products who perhaps are manufactured in the United States, maybe manufactured in the United Kingdom, can go to their courts and have a remedy. That's one of the public factors, which is what's the forum's particular interest? Here that relates because we have a U.K. citizen where this happened in the United Kingdom. It's important that the U.K. courts have the ability, and frankly, they do. Are there legal advantages to the parties based on the location of the suit? It seems odd that a defendant, in essence, wants to have the game in the visitor's arena. Usually, if something like that's going on, you're wondering, okay, why don't they want to play at home? I don't think there's anything about not wanting to have a home field advantage or anything like that going on. But we think that there's important evidence in the United Kingdom that we want to be able to have so we can prove our defenses. Well, is there something in the record to show that United Kingdom evidence wouldn't be available here? There's nothing in the record, but if you look at what the Hague Convention says about the different availability of evidence, it's easier for Mr. Dibble to get evidence into the United Kingdom than it is for us to get evidence out of the United Kingdom. And that's exactly what we have a balancing test that considers that among several other factors. I think depending on the formulation that you look at, whether it's Piper Aircraft or another one of this court's decisions, there are anywhere from ten to eight factors. And it gets back to what I started with, which is the abuse of discretion standard. If this case was refiled in the United Kingdom, would it be barred by a statute of limitations? I don't think that argument was, first of all, the argument wasn't made in the district court. But it is your burden to show that that form is more convenient, is it not? Yes, it is. We have the burden of persuasion. Shouldn't that have been disclosed to the district court if it was barred by a statute of limitations? At the time that the case was filed, I don't believe it was barred by the statute of limitations. At the time that Judge Doty made his decision, I don't believe it was barred by the statute of limitations. And then in the subsequent weeks, whether you count from the March 15th explant surgery, whether you count from, this is also in the complaint, there's an August, I believe it's the 12th or the 21st, where the device was sent to Ethicon and it did some inspection of what happened. There was a period of time when this was in front of the district court, whether it was on the original motion or even when the reconsideration, that Mr. Dibble could have filed that case in the United Kingdom. Are you really seeking convenience or are you seeking to win based on a statute of limitations? Well, if we had a statute of limitations defense before the district court, we would have brought that. We brought the forum non-convenience because based on what we knew at the time and what was briefed in front of the district court, Torax and Ethicon believed and still believe that the UK would be the most appropriate forum to have this case because of the context in the UK and because of the evidence availability issues in the United Kingdom. So what the district court did and what this court is to review is whether the district court made a mistake, when it made some sort of legal error when it was balancing these factors. We don't get to reweigh them. We don't get to go and say, well, perhaps we would have done it differently. But in the mix of all of the facts that the district court had before it, whether they were in the complaint and presented and how they were presented to the district court, the district court made the correct decision. The district court's decision was reasonable. That goes both to the decision to grant the motion for forum non-convenience and it goes to the district court's decision to not permit an amendment. One point I wanted to make about the amendment issue that you talked about with Mr. Dufert is this. Mr. Dufert didn't need to wait until the district court issued its decision on the motion to dismiss. He could have submitted affidavits, other evidence in response to the motion. Mr. Dufert believed that at the time he did have evidence available that he could have put in an amended complaint. He could have done that instead of responding to the motion. So there were several opportunities for whatever evidence he believed he needed or that he had to get in front of the district court. And yet the district court seems to have accepted the motion and decided it on futility grounds. That's correct. How could the district court determine that amendment was futile based only on the face of the original complaint and the party's arguments on the motion to dismiss? You look at the evidence in the original complaint. Mr. Dibble talked about the types of testimonies, the categories of testimony that he would have wanted to present about design, manufacturer, and marketing issues. That issue was briefed in front of the district court and you can find the bullet points that Mr. Dibble's brief has. It's on pages 47 and 48 of the record where it talks about the types of evidence and witness testimony that he wanted to present. That was talked about at oral argument. I think if you look on page 99 of the appendix, you can see where he talked about those issues. The only difference on the motion for reconsideration was that he put some names in there and he had come up with maybe gone on LinkedIn perhaps to find the names of those individuals. So the district court had the information that Mr. Dibble thought was important related to the motion for reconsideration in the original motion, in the briefing and the arguments that were presented. And so the district court didn't make a mistake when it found that it would be futile to add those, to grant an amendment to add that information to the complaint because he had already received that information and was able to make a decision about it. So just to sum up, Torax Medical and Ethicon are asking the court to affirm Judge Jody's decision, granting the motion for a forum non-convenience dismissal and also to affirm his decision, denying the motion for reconsideration. Thank you. Thank you. I'll give you a minute for rebuttal. I appreciate that, Your Honor. Thank you. I just want to correct a misstatement that the council made. Treatment for Mr. Dibble was not directed from the United Kingdom. Treatment was directed from Dr. Bell in Colorado and was carried forth by... From the first implant. That was not... The initial implantation was done in London, yes. That was by a doctor who had no... There's no allegation that that doctor had any understanding of a defect in what he put in, nor at that point was there any injury happening. So council does not explain how the testimony of that doctor would actually be significant to the actual pleaded liability theories and damages. Then in 2023, Mr. Dibble, after taking numerous tests and procedures that are set out in the complaint, had one in the United Kingdom. And it was a diagnostic test. All it did, it was confirmed that, yes, you have reflux, which he had known for a long time. And that physician concluded, we can't treat you because you have a lynx inside of you. And that precludes it. So that was kind of an evanescent contact. And the burden is on them to explain why that witness's testimony is so important to this case. They don't do that. I don't think they even named that doctor. I just want to say, at the end, this is supposed... And the cases, the Eighth Circuit and elsewhere are very clear. This is supposed to be about doing justice and really promoting convenience and efficiency for people. And this is a game where I think they're just trying to prevent this case from going forward in an expeditious and reasonable way. All Mr. Dibble wants is his day in court. This is where they're headquartered, or at least have been headquartered. We would ask your indulgence, and please let us proceed in that fashion. And one last thing. It's a discretionary standard, so it's hard to plead in the first instance around a discretionary standard. That's not a fair burden to put on us, I believe. Thank you very much. I appreciate it. Thank you, counsel. Argument has been helpful in the cases well-briefed. We'll take it under advisement. Does that complete the morning's argument? Yes, your honor. Very good. Then the court will be in recess until nine o'clock tomorrow morning.